[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Petitioner, Oscar Martinez DeJesus, brings this petition for a Writ of Habeas Corpus by an amended petition dated March 15, 1996. The Respondent filed a Corrected Return dated April 24, 1996. The Petitioner was originally charged with Murder, (§53a-54a(a)) Risk of Injury to a Minor (§ 53-21) (Two Counts) and Carrying a Dangerous Weapon (§ 53a-206 (a)). He was tried by a three judge panel and found Guilty of Murder (§ 53a-54a(a)) and Carrying a Dangerous Weapon (§ 53a-206 (a)). The Petitioner received; a total effective sentence of sixty-three years incarceration. CT Page 4225-JJ
The Petitioner alleges that his attorney was ineffective in that he failed to call a Dr. Arturo E. Morales as a witness at either the trial of the Petitioner or at his subsequent sentencing hearing. The Petitioner also alleges he wanted a jury trial and not a trial by a three judge panel and that he made this fact known to his counsel. The Petitioner was represented by Attorney Yvonne Rodriquez-Schack and Attorney Fred DeCaprio.
The victim in this matter was the Petitioner's estranged girlfriend with whom he had fathered a daughter. The Petitioner had stabbed or wounded the victim several times with a machete. He initially attacked her and then broke off the attack and walked away. However, when the victim pleaded for help the Petitioner returned to her and renewed his attack. During this second assault, the Petitioner held the victim's head up by grasping her hair with his left hand while at the same time striking her in the neck with the machete several more times, killing her. The victim's two sons were present as the Petitioner murdered their mother.
The Petitioner appealed his conviction to the Connecticut Supreme Court and the conviction was affirmed at 236 Conn. 189
(1996).
Attorney Fred DeCaprio one of the Petitioner's trial attorneys testified in this matter. The Petitioner presented two affirmative defenses in this case, namely insanity and extreme emotional disturbance. Both defenses were rejected by the trial court. The Petitioner now claims his trial counsel was ineffective in that they did not call Dr. Arturo E. Morales as a witness in either the trial proceedings or the subsequent sentencing hearing. Dr. Morales testified at habeas hearing and his report was admitted as Exhibit G. Dr. Morales's report concluded that at the time of the offense the Petitioner was legally insane and could not conform his conduct to the requirements of the law.
At the time of trial the Petitioner had been examined by Dr. Walter A. Borden, a Forensic Psychiatrist; Dr. Julio Ramos-Grenier, a licensed Psychologist; and Dr. Peter M. Zeman of the Forensic Consultation Services. Dr. Borden and Dr. Ramos-Grenier testified for the Petitioner at his trial. Dr. Zeman did not testify. Attorney DeCaprio testified that Dr. Morales came into the case either during the trial or just before the trial commenced. He stated he had Dr. Morales's oral report two weeks CT Page 4225-KK before he got his written report. Attorney DeCaprio testified there were no significant differences in the findings of Doctors Borden, Zeman and Morales but that Dr. Morales's conclusion differed from the conclusions of Dr. Borden and Dr. Zeman. He stated Dr. Morales and Dr. Ramos-Grenier's conclusions supported the insanity defense. Attorney DeCaprio stated he had worked with Dr. Borden in the past and knew he would make a good witness for the Petitioner. Dr. Borden knew the Petitioner since 1982 and had testified successfully in Mr. DeJesus's previous trial in 1980. In that matter the defense was that the Petitioner was extremely emotionally disturbed and the trier agreed with that defense. Attorney DeCaprio testified he used Dr. Borden's findings in an attempt to establish extreme emotional disturbance of the Petitioner or that the Petitioner had a mental disease or defect at the time of the offense.
Attorney DeCaprio testified that he made a tactical decision not to call Dr. Morales as a witness on behalf of the Petitioner at the trial. He stated Dr. Morales's evidence would be cumulative and his findings would be consistent with the evidence the Petitioner had already submitted. If he had called Dr. Morales as a witness in the trial the State's Attorney could have had the Petitioner examined by their own doctor and up to that point the State had not had such an examination according to Attorney DeCaprio. The reason for this fear was due to the fact that the Petitioner did not retain Dr. Morales until just prior to the trial.
The Petitioner called Dr. Kenneth Selig, a Forensic Psychiatrist, as a witness in the habeas hearing. He reviewed all of the medical reports in evidence including Dr. Borden's reports (Exhibits 1, 2, 3 and 4) and Dr. Morales's report (Exhibit G). Dr. Selig testified that Dr. Morales found that the Petitioner had significant brain damage and had a post traumatic stress disorder and suffered from depression, alcohol and drug abuse and that at the time of this murder was in a disassociated state. As a result he was more impulsive and when under stress he could not control his conduct and act within the law and was therefore insane. Dr. Selig stated Dr. Borden did not feel the Petitioner had brain damage that would qualify as a mental disease or defect under the statute and therefore he was not insane. Dr. Selig testified both Dr. Morales and Dr. Borden felt the Petitioner was extremely emotionally disturbed at the time of the murder.
Dr. Arturo Morales testified during the habeas hearing. He CT Page 4225-LL stated he was prepared to testify at the trial and the subsequent sentencing hearing but he was never called by the Petitioner's attorneys to do so. He stated that at the time of the offense the Petitioner could not conform his behavior to the requirements of the law and in his opinion was insane.
The Petitioner also alleges that his trial counsel was ineffective because they did not call Dr. Morales to testify at the sentencing hearing. Attorney DeCaprio testified that the Petitioner could have used Dr. Morales for mitigation evidence at the sentencing hearing. He stated mitigation evidence was presented at the sentencing hearing as was evidence of the Petitioner's mental state at the time of the murder. Attorney DeCaprio stated at sentencing Dr. Morales could not have added to anything other than what was testified to during the trial.
The third count of the Petitioner's Writ of Habeas Corpus concerns his election to be tried by a three judge panel rather than a jury. The Petitioner testified that his attorneys insisted that his trial had to be to a three judge panel and not a jury. The Petitioner testified that Attorney Fred DeCaprio and Attorney Yvonne Rodriquez-Schack said a three judge panel was the best but that was not his decision. He said he told his Attorney he wanted a jury trial. Attorney DeCaprio testified that the Petitioner may have initially said he was interested in a jury trial but he recommended that the case be tried to a three judge panel. He stated he made this recommendation because the Petitioner's defense rested on his mental state and that defense is difficult to convey to a jury. Attorney DeCaprio also stated that the Petitioner had two prior manslaughter convictions in 1980 and that he was paroled for these convictions after serving five years in jail. The victims of those offenses were the Petitioner's brother and sister-in-law. Attorney DeCaprio testified it was eminently clear to him that the Petitioner was better off trying his case to a three judge panel rather than a jury. He stated he told this to the Petitioner and he (Petitioner) went along with that recommendation. Attorney DeCaprio testified that he did not think the Petitioner had any question about the election of the three judge panel.
"Our Supreme Court has adopted the two-pronged analysis ofStrickland v. Washington, supra, to determine if counsel's assistance was ineffective. Bunkley v. Commissioner ofCorrection, 222 Conn. 444, 455, 610 A.2d 598 (1992); Sekou v.Warden, 216 Conn. 678, 690, 583 A.2d 1277 (1990). Under this CT Page 4225-MM analysis, to prevail on a constitutional claim of ineffective assistance of counsel, the petitioner must demonstrate both (1) deficient performance and (2) actual prejudice. Bunkley v.Commissioner of Correction, supra; Hull v. Warden, 32 Conn. App. 170,174, 628 A.2d 32 (1993); Siano v. Warden, supra."
"`To satisfy the first prong, that his counsel's performance was deficient, the petitioner must establish that his counsel made errors so serious that [he] was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. . . . The petitioner must thus show that counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . We will indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' (Citations omitted; internal quotation marks omitted.) Siano v.Warden, supra, Hull v. Warden, supra; Copas v. Warden, supra, 683-84."
"To satisfy the second prong, that his counsel's deficient performance prejudiced his defense, the petitioner must establish that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . The petitioner must establish that, as a result of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal. . . . The second prong is thus satisfied, if the petitioner can demonstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' (Citations omitted; internal quotation marks omitted.) Siano v.Warden, supra, 98; Bunkley v. Commissioner of Correction, supra, 454-55." Davis v. Warden, 32 Conn. App. 296, 301-303,629 A.2d 440, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993); Johnson v.Commissioner of Correction, 36 Conn. App. 695, 701, 702 (1995).
The court finds no merit to the Petitioner's claim that his counsel was ineffective because they did not call Dr. Arturo Morales as a witness. Attorney DeCaprio's testimony clearly explained the reasons for not calling Dr. Morales. It was a tactical decision which made sense to this court. Further the fact that Dr. Morales conclusions as to the Petitioner's mental state were different than the conclusions of Dr. Borden's could CT Page 4225-NN very well have affected the credibility of each doctor in the eyes of the trier. This would have hurt the Petitioner's chance to prevail on his defense.
The court finds no merit to the Petitioner's claim that his counsel was ineffective because they did not call Dr. Morales as a witness at the Petitioner's sentencing hearing. Dr. Morales could not have added anything to that hearing that the three judge panel had not already heard.
The court reviewed the canvass of the Petitioner when he made his election to be tried by a three judge panel rather than a jury. There is no question that the Petitioner understood the choice he was making at that time. The Petitioner's election to be tried by a three judge panel was voluntary and not coerced in any way. The court finds this allegation to be without any merit whatsoever.
After hearing the evidence this court finds that the Petitioner has failed to sustain his burden of proof on either prong of the test set forth in Strickland v. Washington, supra, as to any of the allegations in his Amended Petition dated March 15, 1996. He has not proved that either Counsel who represented him was deficient. Further he has not proved that he was prejudiced by either of his attorney's representation of him.
For the above reasons the Petitioner's habeas corpus petition is denied.
William J. Sullivan, Judge